UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
JASON GOODE,                    :
        Plaintiff,              :
                                :              PRISONER
     v.                         :  Case No. 3:04CV1524(WWE)
                                :
WILLIAM FANEUFF, et al.,        :
        Defendants.             :
```

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jason Goode commenced this civil rights action *pro se* pursuant to 28 U.S.C. § 1915. He alleges that defendants, Unit Manager Faneuff and Correctional Officers Wiseman and Lopez, failed to protect him from assault by another inmate. The defendants have moved for summary judgment. For the reasons that follow, the defendants' motion will be granted.

**I.  Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case. See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

The court construes the facts in the light most favorable to the nonmoving party. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir.), cert. denied, 127 S. Ct. 382 (2006).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

## II. **Facts**[1]

As of November 5, 2001, plaintiff was incarcerated at Northern Correctional Institution in Unit 1 West, Cell 111. His

---

[1] The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #46-2] and the exhibits and affidavits attached to the defendants' memorandum [doc. # 46-4] and plaintiff's Local Rule 56(a)2 Statement and the exhibits attached to the Statement [doc. #49] and the exhibits attached to plaintiff's Memorandum in Opposition to the Motion for Summary Judgment [doc. #47].

cellmate was Inmate Walter Lawson. On November 21, 2001, plaintiff and Inmate Lawson got into an argument. The argument escalated into a fight. Plaintiff threw only one punch. Correctional Officers Wiseman and Lopez observed the argument and altercation, gave orders to the plaintiff and Lawson to stop fighting, called a Code Blue summoning Captain Faneuff to the scene, but did not intervene. After Captain Faneuff arrived at plaintiff's cell the fight ceased, both inmates were handcuffed and an officer escorted the plaintiff to the medical unit for treatment, including x-rays. Plaintiff suffered a broken jaw.

Approximately two weeks prior to November 21, 2001, plaintiff had been in a cell adjacent to Inmate Lawson and had attempted to be supportive of him. At no time prior to November 21, 2001, did plaintiff have any problems with Inmate Lawson, complain to anyone about Inmate Lawson or request to be placed in protective custody. After the altercation, plaintiff declined to press charges against Inmate Lawson.

### III. Discussion

Plaintiff contends that he should not have been placed in a cell with Inmate Lawson and that defendants Wiseman and Lopez failed to intervene to stop the November 21, 2001 altercation between himself and Inmate Lawson. The defendants argue that the plaintiff cannot state a claim for failure to protect him from

3

assault by Inmate Lawson.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to make reasonable efforts to ensure inmate safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). This duty includes protecting inmates from harm at the hands of other inmates. See id.; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

To establish a constitutional violation, a prisoner must show that the conditions of his incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to his safety. See Farmer, 511 U.S. at 834. Deliberate indifference exists where the official both knows of and disregards an excessive risk to inmate safety. See id. at 837. For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated. See, e.g., Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985).

### A. **Failure to Prevent Assault**

Plaintiff contends that the defendants were deliberately indifferent to his safety when they housed him in the same cell with Inmate Lawson prior to the assault. The plaintiff alleges that after his transfer to Northern in June 2001, he expressed

concerns about his safety to a Department of Correction employee who is not a defendant in this case. Prison officials transferred him to a cell with Inmate Lawson on November 5, 2001, and Inmate Lawson assaulted the plaintiff in that cell on November 21, 2001.

The defendants have submitted a copy of plaintiff's deposition in which he states he did not have any problems with Inmate Lawson, complain to anyone about Inmate Lawson or request to be placed in protective custody prior to the altercation with Inmate Lawson on November 21, 2001. In addition, plaintiff conceded that he had been housed in a cell adjacent to Inmate Lawson two weeks prior to the altercation and that he and Inmate Lawson experienced no problems during that time.

Plaintiff has presented no contrary evidence suggesting that any of the defendants were aware that he would be assaulted by Inmate Lawson on November 21, 2001. Although plaintiff presents evidence that he was assaulted by another inmate in September 2001, he does not allege or submit evidence indicating that any of the defendants were aware of that prior assault. One prior incident involving an assault on plaintiff by a cellmate of which defendants were not aware, does not constitute knowledge of a substantial risk of harm to plaintiff by future cellmates. See Farmer, 511 U.S. at 842 (Correctional staff would be on notice

of a substantial risk of harm if there was a "longstanding, pervasive, well-documented" history of inmate attacks and staff had been exposed to that information.) The motion for summary judgment will be granted as to this claim.

Plaintiff also generally asserts that due to the lack of a written policy requiring Department of Correction officials at Northern to perform an inmate compatibility assessment prior to assigning an inmate a cellmate, he was improperly housed in the same cell with Inmate Lawson and subjected to assault by him. The requirement that an inmate share a cell with another inmate is not unconstitutional. See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981)(holding that double-celling inmates in an overcrowded facility was not unconstitutional). Research reveals no constitutional requirement that prison officials have a written policy in place regarding determinations of inmate compatibility for purposes of cell assignments.

Plaintiff does not allege that any of the defendants were responsible for the policies used by the Department of Correction to determine inmate compatibility at Northern in November 2001 or that any of the defendants authorized his placement in the cell with Inmate Lawson prior to the altercation. Furthermore, plaintiff does not allege or provide evidence to suggest that he was incompatible with Inmate Lawson prior to the assault. In

fact, plaintiff conceded that prior to the assault by Inmate Lawson, he and Inmate Lawson were confined in cells adjacent to each other in the restrictive housing unit and he offered words of support to Inmate Lawson during that difficult time period. Accordingly, the plaintiff has failed to state a claim upon which relief may granted as to his allegations that the alleged flawed policy for determining inmate compatibility at Northern subjected him to confinement in a cell with and assault by Inmate Lawson. The motion for summary judgment will be granted on this ground.

**B.   Failure to Intervene**

Plaintiff alleges that defendants Lopez and Wiseman failed to intervene to stop the assault by Inmate Lawson.  The defendants argue that plaintiff has failed to exhaust his available administrative remedies as to this claim.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action ... with respect to prison conditions."  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  See Booth v. Churner, 532 U.S. 731, 741 (2001).

Inmates must properly exhaust their administrative remedies. This requirement includes complying with all procedural requirements, including filing deadlines. See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

The Second Circuit recognizes three exceptions to the exhaustion requirement: "(1) administrative remedies were not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. The court takes judicial notice of Directive 9.6, which provides that matters relating to application of departmental policies, rules and procedures, individual employee actions, and any other matters relating to access to programs, conditions of care and housing unit conditions are grievable. The plaintiff's claim falls into these categories. Thus, administrative remedies were available to him.

The defendants raised failure to exhaust administrative remedies in their answer and motion for summary judgment. They have not waived the defense. In addition, the plaintiff does not argue that any defendant acted in a way that would estop him from asserting this defense.

Finally, the plaintiff has presented no evidence suggesting the existence of special circumstances that would justify his failure to comply with the exhaustion process. The plaintiff states that he filed grievances regarding the timeliness of tours through the unit on the day of the assault. That claim, however, is not in the complaint.[2] The claim that Officers Wiseman and Lopez failed to intervene once the assault began is completely different than the claim that officers failed to make routine tours of the unit.

The court concludes that the plaintiff has satisfied none of the exceptions to the exhaustion requirement. He attached to his complaint copies of grievance forms submitted regarding issues not included in this action. Thus, the court concludes that the plaintiff understood the grievance process.

The defendants have submitted the affidavit of the grievance coordinator at Northern Correctional Institution. The grievance

---

[2] Plaintiff cannot amend his complaint in a motion or memorandum. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), cert. denied, 525 U.S. 1104 (1999).

9

coordinator noted that the plaintiff filed many grievances during the relevant time period, but did not submit any grievance regarding correctional staff waiting too long or failing to intervene in the altercation between the plaintiff and Inmate Lawson on November 21, 2001.  In opposition to the defendants' motion for summary judgment, the plaintiff has provided no evidence that he properly exhausted these claims.  See Macias v. Zenk, 495 F.3d 37, 43-44 (2d Cir. 2007) (affirming dismissal for failure to properly procedurally exhaust administrative remedies where inmate presented no argument suggesting administrative procedures were so confusing that his failure to comply with procedural requirements was justified and noting that notice to prison officials alone is insufficient to satisfy exhaustion requirement).

The defendants' motion for summary judgment will be granted as to the claim that Officers Wiseman and Lopez failed or waited too long to intervene in the assault on the plaintiff by Inmate Lawson on the ground that the plaintiff failed to properly exhaust his administrative remedies before commencing this action.

**IV. Conclusion**

The defendants' motion for summary judgment [**doc. #46**] is **GRANTED**. The Clerk is directed to enter judgment for the defendants and close this case.

**SO ORDERED** this 8th day of August, 2008, at Bridgeport, Connecticut.

/s/
_____
Warren W. Eginton
Senior United States District Judge